## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Chicagoland Guns & Range, LLC | ) | Case No.  23-81055 |
| | ) | |
| Debtor. | ) | Judge Thomas M. Lynch |

## THIRD AMENDED  SUBCHAPTER V PLAN OF REORGANIZATION

Chicagoland Guns & Range, LLC proposes the following Third Amended Plan of Reorganization to its Creditors pursuant to Section 1189(a) of the Bankruptcy Code, 11 U.S.C. §1189(a).

Karen J. Porter
**PORTER LAW NETWORK**
230 West Monroe, Suite 240
Chicago, Illinois 60606
312-372-4400
Attorney No. 6188626
porterlawnetwork@gmail.com

1

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| Introduction to Plan | | 3 |
| Summary of the Plan | | 4 |
| Article 1. | Rules of Construction and Definitions | 5 |
| Article 2. | Classification and Impairment of Claims and Interests | 8 |
| Article 3. | Treatment of Administrative and Priority Claims | 9 |
| Article 4. | Treatment of Class One: Secured Claim: | 10 |
| Article 5 | Treatment of Class Two:  Unsecured Claims | 11 |
| Article 6. | Treatment of Class Three:   Equity Security Holder | 11 |
| Article 7. | Executory Contracts and Unexpired Leases | 12 |
| Article 8. | Implementation of  the Plan | 12 |
| Article  9 | Claims and Causes of Actions | 13 |
| Article 10. | Modification and Cramdown of the Plan | 13 |
| Article 11. | Effect of Confirmation | 14 |
| Article 12. | Retention of Jurisdiction | 14 |
| Article 13. | Notices and Miscellaneous Provisions | 15 |

# INTRODUCTION

## A. BACKGROUND ABOUT THE DEBTOR

Chicagoland Guns & Range, LLC is an Illinois Limited Liability Company established in 2015. Leo Carlson Tessler is the sole member and manager. There have been no other managers, members or investors.

Chicagoland Guns & Range. LLC sells guns and ammunition to the public. Chicagoland Guns & Range, LLC also operates a gun range which rents guns and ammunition to members of the public using the gun range.

Leo Carlson Tessler acquired the business from KAP Guns. It was a seller financed acquisition. The Kenneth C. Polhamus Trust retained a mortgage on the real estate. That secured claim is now $361,443.44. KAP Guns holds an unsecured claim for $120,000.00.

The obligations to KAP Guns and the Kenneth C. Polhamus Trust were subject to balloon payments. The entire balances were due in September of 2022.

In addition to the matured loan obligations, the State of Illinois restricted the sale of certain firearms. This governmental restriction resulted in an adverse effect on revenue.

Chicagoland Guns & Range filed the chapter 11 case to restructure its liabilities. Chicagoland Guns & Range, LLC plans to continue to operate its business. Leo Carlson Tessler will remain the sole member and manager of the company.

## B. LIQUIDATION ANALYSIS

In order the confirm the Plan, the Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such Creditors would receive if the Debtor liquidated under chapter 7 of the Bankruptcy Code. A liquidation analysis is attached to this Disclosure Statement as Exhibit A.

3

If the Debtor liquidated under chapter 7 of the Code, the Debtor's creditors would receive one hundred percent of the Allowed Amount of their claims. The Plan proposed by the Debtor provides that Secured and Unsecured Creditors receive full payment of the Allowed Amount of their claims plus interest at the rate of eight and one half percent (8.5%). The Plan proposed by the Debtor meets the requirement that Creditors receive as much under the Plan as they would if the Debtor liquidated.

## C. FEASIBILITY OF THE PLAN

To confirm the Plan, the Debtor must show it has the ability to make the payments to Creditors under the Plan. The Debtor must also show that it will not need to be liquidated or seek further financial rehabilitation after the Plan is confirmed. The Debtor has provided financial projections to support the feasibility of the Plan that were prepared by its accountant and are attached to the Plan as Exhibit B.

## SUMMARY OF THE PLAN

| CREDITOR | CLAIM STATUS | CLAIM AMOUNT | PLAN TREATMENT |
|---|---|---|---|
| Internal Revenue Service | Priority Not Classified | 1759.06 | Payment in full on the Effective Date |
| Illinois Department of Revenue | Priority Not Classified | 500.00 | Payment in full on the Effective Date |
| Kenneth C Polhamus Trust | Secured Class One | 361,443.44 | Payment in full with interest at 8% |
| KAP Guns | Unsecured Class Two | 120,000.00 | Payment in full with interest at 8.5% |
| Huff & Huff | Unsecured Class Two | 14,897.31 | Payment in full with interest at 8.5% |
| Nancy Lee Carlson | Unsecured Class Two | 25,000.00 | Payment in full with interest at 8.5% |
| Liberty Mutual | Unsecured Class Two | 2916.00 | Payment in full with interest at 8.5% |
| Internal Revenue Service | Unsecured Class Two | 110.76 | Payment in full with interest at 8.5% |
| Total | | $526,626,57 | |

4

## ARTICLE 1
## RULES OF CONSTRUCTION

For purposes of this Plan and unless otherwise indicated herein, the rules set forth below shall be applied in the event the Plan is construed by any Court, Creditor or other party in interest.

1.1     A word, phrase, or term that is used in the Plan and is not defined in this Article, but is defined in Section 101 of the Code, or used in another section of the Code, shall have the meaning or construction that applies to the word, phrase or term as defined or used in the Code.

1.2     Capitalized terms in the Plan shall at all times refer to the terms as defined in this Article.

1.3     Captions: The captions used in the Plan are for convenience only and shall not affect the construction of the Plan.

1.4     Unless otherwise indicated, the words herein, hereof and thereunder and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.

## DEFINITIONS

For purposes of this Plan a capitalized term that is used herein shall refer to and have the meaning of the term that is set forth and is defined below:

1.5     **Administrative Claim:** Any claim for any cost or expense of administration in connection with the Chapter 11 case, in accordance with Section 503(b) of the Code, including, without limitation:

(a) The actual, necessary costs and expenses of preserving the Debtor's estate;

(b) The full amount of all claims for allowances of compensation for legal or other professional services or reimbursement of costs and expenses under Section 330 or Section 503(b) of the Code or otherwise allowed by the Bankruptcy Court;

(c) All fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28, United States Code; and

(d) Expenses incurred by the debtor in connection with this case, including the cost of appraisal fees, attorney fees and expenses incurred in obtaining a confirmed plan, in such amount as the Court shall allow, shall be deemed administrative expenses pursuant to Section 503(b) of the Code for the purposes of this Plan.

5

1.6.   **Allowed Amount**: means the amount of an Allowed Claim.

1.7   **Allowed Claim**: shall mean a claim against the Debtor to the extent that: (a) a proof of such claim or interest was (i) timely filed; (ii) deemed filed pursuant to Section 1111(a) of the Code; and (b)(i) which is not objected to or (ii) which is allowed (and only to the extent allowed) by a Final Order of the Court.

1.8   **Allowed Secured Claim**: Allowed Claim that is an amount equal to the lesser of the Allowed Claim of that creditor or the value of the Property, as determined by the Court Pursuant to 11 U.S.C. §506, minus the amount of any Allowed Claim secured by a senior lien against the same Property, unless the holder of the claim elects pursuant to Section 1111(b) in which event the Allowed Secured Claim shall be equal to the Allowed Claim.

1.9   **Allowed Unsecured Claim**: Any Allowed Claim that is not an Administrative Claim, an Allowed Priority Claim, or an Allowed Secured Claim, including any Deficiency Claim against the Debtor.

1.10   **Bankruptcy Code**: means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §101, et. seq.

1.11   **Bankruptcy Rules**: means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, (b) the Federal Rules of Civil Procedure, as amended and (c) the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois.

1.12   **Business Day**: Any day that is not a Saturday, Sunday or legal holiday as defined by Section 101(5) of the Code.

1.13   **Case**: The chapter 11 case number 23-81055 filed by the Debtor on the Petition Date.

1.14   **Causes of Action**: mean any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, in law, equity or otherwise, including all actions under chapter 5 of the Bankruptcy Code.

1.15   **Claim**: A claim against the Debtor as defined by Section 101(5), whether or not asserted and whether or not proof of which is filed.

1.16   **Class**: A category of holders of Claims or Interests specified in Article 2 of the Plan.

6

1.17    **Confirmation Date:** The date the Confirmation Order is entered by the Court in accordance with the provisions of the Code; provided, however, that if the Confirmation Order is stayed on a motion pending appeal, then the Confirmation Date shall be the date the Final Order vacating such stay is entered by the Court.

1.18    **Confirmation Order:** The Order of the Court confirming the Plan pursuant to Section 1129 of the Code.

1.19    **Court:** The United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, including the United States Bankruptcy Judge presiding in this case or any other Court that may have jurisdiction over this Chapter 11 case.

1.20    **Creditor:** An entity that is the holder of a Claim against the Debtor that arose on or before the Petition Date.

1.21    **Debtor:** The Illinois limited liability company, Chicagoland Gun & Range, LLC.

1.22    **Disallowed Claim:** Any Claim which is disallowed by a Final Order of the Court.

1.23    **Disbursement Account:** The  account established by the Debtor  the Debtor for the purpose of the  making the disbursements to Creditors provided by the Plan.

1.24    **Disbursing Agent:** William Gray, the accountant employed by the Debtor.

1.25    **Disputed Claim:** Any Claim (i) that the Debtor objects to pursuant to Bankruptcy Rule 3004 and (ii) the objection has not been resolved by a Final Order of the Court allowing or disallowing the Claim.

1.26    **Effective Date:**  The first Business Day after the date that the Confirmation Order becomes a Final Order.

1.27    **Final Order:** An order of judgment of the Court which (a) has not been reversed, stayed, vacated, modified or amended, and as to which the time to appeal or seek review or rehearing has expired and as to which any right to appeal, reconsider, reargue, petition for certiorari or rehearing has expired or been waived, as a result of which such order shall have become final in accordance with applicable law or (b) if an appeal, reargument, certiorari or rehearing thereof has been sought, the order of the lower court has been affirmed by the higher court to which the order was appealed or from which the reargument or rehearing was sought or certiorari has been denied and time to take further appeal or to seek certiorari or further reargument or rehearing has expired.

7

1.28    **Petition Date**: August 24, 2023,  the date on which the Debtor filed the voluntary petition commencing the chapter 11 case.

1.29    **Plan:** This Subchapter V Plan of Reorganization proposed by the Debtor either in its present form or as it may be amended or modified from time to time.

1.30    **Property:** The real estate located at 7307 Edwards Drive, Loves Park, IL 61111.

1.31    **Pro Rata:** The proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims which are entitled to receive distribution under the Plan in that Class.

1.32    **Quarter:** (January, February and March); (April May and June); (July August and September); (October, November and December) of each year that payments remain due to Creditors under the Plan.

1.33    **Quarterly Disbursement Dates:** March 30th, June 30th, September 30th and December 30th  of each year that payments remain due to Creditors under the Plan.

1.34    **Reorganized Debtor**:  The Debtor after the Effective Date.

1.35    **Subchapter V Trustee:**  William Avellone , or any successor trustee appointed by the Office of the United States Trustee.


**ARTICLE 2**
**CLASSIFICATION AND IMPAIRMENT OF CLAIMS AND INTERESTS**

2.1    Administrative Claims are not classified by the Plan pursuant to Section 1123(a)(1) of the Code.  The holders of Administrative Claims are not entitled to vote on the Plan.

2.2    Priority Claims are not classified by the Plan pursuant to Section 1123(a)(1) of the Code.  The holders of Priority Claims are not entitled to vote on the Plan.

2.3    All Claims and Interests are placed in one of the following Classes:

A.    **Class One** consists of the Allowed Secured Claim held by Kenneth Polhamus Trust.  Class One is impaired by the Plan.

B.    **Class Two** consists of the Allowed Unsecured Claims.  Class Two is impaired by the Plan.

C.    **Class Three** consists of the Interest of the Equity Security Holder, Leo Carlson-Tessler.   Class Three is unimpaired by the Plan.

8

2.4     Any claim that is a Disallowed Claim, a Disputed Claim, and any Claim that becomes a Disallowed Claim after the Effective Date, shall not be classified herein and the holder thereof shall receive no distribution under the Plan. Any Disputed Claim that becomes an Allowed Claim before or after the Effective Date shall be classified and receive distribution as provided by the Plan.

2.5     There shall be no other Classes of Claims unless the Plan is modified by the Debtor or by Final Order of the Court to provide for additional or different classes of Claims.

2.6     Any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan, and (b) determining whether the Class has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS

3.1     Unless the holder of the Claim agrees otherwise, any Administrative Claim that is due and unpaid on the Effective Date, and that is allowed by the Court, will be paid in full on the Effective Date. The Administrative Claim for compensation held by the Subchapter V Trustee shall be filed for approval by the court no later than 30 days after the Effective Date and will be paid in full in the amount allowed by the court on or before seven days after the entry of the order awarding the compensation.

3.2     Unless the holder of the Administrative Claim agrees otherwise, any Administrative Claim that is allowed by the Court after the Effective Date will be paid in full as provided by the Final Order of the Court authorizing the payment of such Administrative Claim.

3.3     Provided however that, if the Plan is confirmed under section 1191(b) and the Subchapter V Trustee makes the payments under the Plan as provided by Article 8.5 of the Plan, the Subchapter V Trustee will have the right to file applications for interim compensation every 120 days as provided by section 331 of the Code, unless the court permits more frequent applications for interim compensation. The Debtor will pay the amount of the administrative claim awarded to the Subchapter V Trustee seven days after the entry of the Final Order awarding the compensation.

3.4     Priority Claims consist of the allowed claims of the Internal Revenue Service in the amount of $1759.06 and the Illinois Department of Revenue in the amount of $500.00.

9

3.5    Priority Claims will be paid in full on or before the Effective Date of the Plan.

## ARTICLE 4
### TREATMENT OF CLASS ONE
### SECURED CLAIM OF KENNETH C POLHAMUS TRUST

4.1    Class One is the Allowed Secured Claim held by  Kenneth C. Polhamus Trust in the amount of $361,443.44.

4.2    Class One will receive the following treatment under the Plan: Class One  will retain the liens, security interests and encumbrances against the Property  after the Effective Date to the same extent that it held such liens, security interests and encumbrances on the Petition Date.  Class One will receive full payment of the Allowed Amount of its Secured Claim with interest at a rate of eight percent (8%).

4.3    Class One will receive monthly payments in the amount of $6787.24 for 66 months.  The first payment will be due on the Effective Date of the Plan. Thereafter the monthly payments to Class One will be due on the first day of the month.

4.4    The Debtor shall pay the real estate taxes for the Property and maintain insurance coverage for the Property.

4.5    The Class One creditor will have the right to recover reasonable attorney's fees for the enforcement of the Debtor's payment obligations under the Plan after a material default under the Plan which the Debtor fails to cure.

4.6    After a material default under the Plan which the Debtor fails to cure, the Class One Creditor will have the right to increase the interest rate under the Plan to a default rate of eleven percent (11%).

4.7    The Debtor will have the right to pay the Class One Claim in full at any time before the 60th month of the Plan,  by paying the balance due to Class One plus accrued interest. The Debtor will have the right to pay the Class One Claim in full at any time without pre-payment penalty.

4.8.    The Debtor will have the right to a release and satisfaction of the Class One Claim,  thirty days after the balance of the Class One Secured Claim, plus accrued interest, is paid in full.  The Class One  Creditor will execute any documents that are reasonable and necessary in order for the Debtor to obtain and record a release of the mortgage against the Property.

## ARTICLE 5
### TREATMENT OF CLASS TWO
### UNSECURED CLAIMS

5.1     Class Two consists of the unsecured claims .

5.2     Class Two Creditors will receive  payment of one hundred percent the Allowed Amount of their Claims, plus interest at eight and one- half percent (8.5%), in 20 Quarterly Disbursements in the amount of $10,027.92 each.  The Quarterly Disbursements will be distributed to Class Two Creditors on a Pro Rata basis. The Debtor will make a Quarterly Disbursement to the Class Two Creditors on  March 30, June 30, September 30 and December 30 of each Plan year until Class Two Claims are paid in full including the amount due for accrued interest at 8.5%.

5.3     The Class Two Creditors will have the right to recover reasonable attorney's fees for the enforcement of the Debtor's payment obligations under the Plan after a material default under the Plan which the Debtor fails to cure.

5.4     After a material default under the Plan which the Debtor fails to cure, the Class Two Creditors will have the right to increase the interest rate under the Plan to a default rate of eleven percent (11%).

5.5     The Debtor reserves the right to pay any Class Two Claim  with an Allowed Amount of  less than $3,000.00 in full without interest on the Effective Date of the Plan.

5.6.     The Debtor reserves the right to complete its payment obligation under the Plan to the Class Two Creditors, at any time, and in less than 20 Quarterly Disbursements by making deposits into the Disbursement Account that total the amount required to pay the holders of Class Two  Claims in full plus accrued interest and distributing that amount to the holders of the Class Two Claims.

## ARTICLE 6
### TREATMENT OF CLASS THREE
### INTERESTS OF THE EQUITY SECURITY HOLDER

6.1     Class Three consists of the Interest of the Equity Security Holder of the Debtor.

6.2     The Class Three Equity Security Holder, Leo Tessler Carlson, will retain his Interest in the Reorganized Debtor after the Effective Date.

## ARTICLE 7
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    Any executory contract or unexpired lease that the Debtor entered into prior to the Petition Date (that was not assumed or rejected by Final Order of the Court on or before the Confirmation Date or rejected pursuant to Section 365(d)(3) of the Code or by Final Order of the Court prior to the Confirmation Date) shall be assumed on the Effective Date in accordance with the applicable provisions of Sections 365 and 1123 of the Code.

## ARTICLE 8
### IMPLEMENTATION OF THE PLAN

8.1    The payments to the Creditors under the Plan will be funded from the revenue generated from the operation of the Chicagoland Guns & Range, LLC. business.

8.2    Leo Carlson-Tessler will continue to own 100% of the Reorganized Debtor after the Confirmation Date and will continue as the manager of the Reorganized Debtor.

8.3    In the event the Plan is confirmed under §1191(a), the Debtor shall act as the Plan Disbursing Agent and make all payments to holders of Allowed claims required by the Confirmation Order and the Plan.

8.4    In the event the Plan is confirmed under §1191(b) the Debtor will devote its monthly disposable income (which is the "net cash flow" set forth in the projections attached to the Plan as Exhibit B) to fund the Plan by transferring the net cash flow to the Disbursement Account on the last day of each month.  The net cash flow will be used by the Debtor to fund the payments to Classes One and Two under the Plan and the Administrative Claims of the Subchapter V Trustee.

8.5    In the event the Plan is confirmed under §1191(b), at least 10 days prior to each monthly or quarterly disbursement throughout the life of the Plan, the Debtor shall provide the Subchapter V Trustee with a schedule detailing the proposed distributions for review and subject to the approval of the Subchapter V Trustee. Debtor shall also provide the Subchapter V Trustee with monthly financial statements. After receiving written approval by the Subchapter V Trustee, the Debtor shall act as the Plan Disbursing Agent and make all payments to holders of allowed claims required by the Confirmation Order and the Plan.  In the event the Debtor fails or defaults to make any payment under the Plan, the Debtor shall immediately notify the Subchapter V Trustee of such failure or default.

8.6    On the Effective Date, the Plan will be substantially consummated when payments are made to Creditors under the Plan.

8.7     In the event the Debtor fails to make any payment to Creditors under the Plan after the Effective Date of the Plan, the Debtor shall have fourteen (14) days to cure the default by making the payments to Creditors.

## ARTICLE 9
## CLAIMS AND CAUSES OF ACTIONS

9.1     Pursuant to Section 1123(b)(3) of the Code, the Debtor shall retain the right to, and may, enforce all Claims, Causes of Actions or Interests, which belong to the Debtor or to the estate, including objections to Claims and avoidance actions on behalf of the estate.

9.2     Objections to Claims.  Nothing contained herein, however, shall limit the Debtor's right to object to Claims, if any, that are filed or amended after the commencement of the Confirmation Hearing.  The failure by the Debtor, to object to, or examine, any Claim for purposed of voting shall not be deemed a waiver of the Debtor's right to object to or re-examine the Claim in whole or in part for any other purpose, including, but no limited to, distributions of property under the Plan. Notwithstanding any other provision of this Plan, if any portion of a Claim is a Disputed Claim, the Debtor shall make no distribution or payment thereon unless and until each portion of the Disputed Claim becomes an Allowed Claim.

9.3     Transfers of Claims.  In the event that the holder of any Claim shall transfer such claim, it shall immediately notify the Debtor's counsel in writing of such transfer.  The Debtor's counsel shall be entitled to assume that no transfer of any Claim has been made unless and until Debtor's counsel and the Debtor have received written notice to the contrary.  Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and subject to any request made, waiver or consent given, or other action taken hereunder.  Except as otherwise expressly provided in such notice, the Debtor shall be entitled to assume that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

## ARTICLE 10
## MODIFICATION AND CRAMDOWN OF THE PLAN

10.1     The Plan may be amended or modified by the Debtor at any time prior to the Confirmation Date as provided by Section 1193 of the Code.

10.2     The Plan may be modified by the Debtor or the Court at any time after the Confirmation Date and before its substantial consummation, provided that such Plan, as modified, meets the requirement of Sections 1190 and 1193 of the Code, and the Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Code.

10.3     A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the

time specified by the Court, such holder changes its previous acceptance or rejection.

10.4    In the event the Plan is not confirmed under section 1191(a) of the Code, the Debtor reserves the right to seek confirmation of the Plan under section 1191(b) of the Code and to modify the Plan as is necessary to seek confirmation under section 1191(b) of the Code.

## ARTICLE 11
## EFFECT OF CONFIRMATION

11.1    Binding Effect: Except as otherwise expressly provided in the Plan, the confirmation of the Plan by Final Order of the Court shall (i) bind all holders of Claims and Interests, whether or not they accept the Plan.

11.2    Discharge Consensual Plan.    Except as otherwise expressly provided in the Plan, the confirmation of the Plan by Final Order of the Court under section 1191(a)  shall (i) bind all holders of Claims and Interests, whether or not they accept the Plan, and (ii) discharges the Debtor from any claim that arose before the Confirmation Date.  In addition, except as otherwise provided in the Plan, confirmation of the Plan by the Court shall operate as a discharge effective as of the Confirmation Date, as to each holder of a Claim or Interest receiving or entitled to receive any distribution under this Plan in respect of any direct or indirect right or Claim or Interest such holder had or may have had against or in the Debtor.

11.3    Discharge Non-Consensual Plan: Except as otherwise provided in the Plan, confirmation of the Plan by the Court under section 1191(b) of the Code shall operate as a discharge of the Debtor as provided by section 1192 of the Code as to each holder of a Claim or Interest receiving or entitled to receive any distribution under this Plan in respect of any direct or indirect right or Claim or Interest such holder had or may have had against or in the Debtor.

11.4    Personal Guarantees Not Subject To Discharge.   The personal guarantees of Leo Carlson and Nancy Lee Carlson given to any Creditor will not be affected or discharges by the confirmation of the Plan and will remain fully enforceable  after a material default of the payment obligation under the Plan to a Creditor which the Debtor fails to cure.

## ARTICLE 12
## RETENTION OF JURISDICTION

12.1    Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction, and if closed, the Case may be reopened for the following purposes:

A.    To determine and allow Disputed Claims and Unliquidated  Claims  after objection to such Claims are made by the Debtor.

14

B.     To determine and allow Administrative Claims and requests for payments of compensation to professional persons.

C.     To implement the provisions of the Plan, to determine and resolve controversies and disputes regarding interpretation and implementation of the Plan, to enter orders in aid of the consummation of the Plan, the enforcement of Debtor's rights under the Plan or the protection of the interests of the Debtor or Reorganized Debtor including, without limitation, appropriate orders which may include contempt or other sanction.

D.     To modify the Plan pursuant to Section 1193 of the Bankruptcy Code.

E.     To adjudicate all applications, Claims, adversary proceedings, contested or litigated matters pending on the Effective Date and any or all causes of action, contested matters and adversary proceedings brought by the Debtor after the Effective Date.

F.     To determine any issue raised by any motions, pleadings or other papers filed with the Court by the Debtor or any party in interest before or after the Confirmation Date.

G.     To hear and determine any dispute or controversy with respect to any Claim of the Debtor for a tax liability or any Priority Tax Claim.

H.     To determine all pending applications for the rejection or disaffirmance of assumed executory contracts and unexpired leases and to hear and determine all claims or controversies arising thereunder.

I.     To enter a final decree closing the Debtor's case.

12.2    Failure of the Court to Exercise Jurisdiction.  If the Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of the Case or concerning the Plan including the matters set forth in this Article, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE 13
## NOTICES AND MISCELLANEOUS PROVISIONS

13.1    Notices:  Any notice hereunder to the Debtor must be in writing, and shall be sent by registered or certified mail, postage prepaid to:

Karen J. Porter
Porter Law Network
230 West Monroe, Suite 240
Chicago, Illinois 60606

15

And

Leo Carlson Tessler
7307 Edwards Drive
Loves Park, Il 61111

13.2    Unmarked Ballots:  Any ballot which is executed by the holder of any Allowed Claim, but which does not indicate acceptance or rejection of the Plan, shall not be counted as a vote either to accept or reject the Plan.  Any ballot not returned in accordance with the return instructions on the ballot pertaining to this Plan shall not be counted for voting purposes.

13.3    Severability: Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

13.4    Successors and Assigns:  The rights and obligations of any Creditors or entity thereunder shall be binding upon, and shall inure to the benefit of, the successors or assigns of such Creditor or entity.

Respectfully submitted,

CHICAGOLAND GUNS & RANGE, LLC

By: _____
       Leo Carlson-Tessler, Manager

By: _/s/Karen J. Porter __
       Karen J. Porter
One of its attorneys

Karen J. Porter
**PORTER LAW NETWORK**
230 West Monroe, Suite 240
Chicago, Illinois 60606
(312) 372-4400
Attorney No 6188626
porterlawnetwork@gmail.com

16

Chicagoland Guns & Range, LLC
Case No 23-81055

**EXHIBIT A**
**Liquidation Value of Assets**

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $85,000.00 |
| b. | Real Estate* | $850,000.00 |
| c. | Inventory | $258,000.00 |
| d. | Office furniture, fixtures, equipment and electronics | $100,000.00 |

| | | |
|---|---|---|
| | **Total Asset Value** | ***$1,293,000.00*** |
| Less: | | |
| | Costs of Sale of Real Estate (Estimated 10%) | $85,000.00 |
| | Total Costs of Sale | $85,000.00 |

**Asset Value After Costs of Sale:**    $1,208,000.00

Less

Secured creditors' recoveries:    $361,443.44
Kenneth C. Polhamus Trust

**Total Assets Available for Unsecured Creditors**    **$846,556.56**

Total dollar amount of unsecured claims    165,183.13

Percentage unsecured creditors receive from liquidation    100%

# CHICAGOLAND GUNS & RANGE LLC

## FINANCIAL PROJECTIONS

## DEBTOR IN POSSESSION CASE # 23-81055

## CALENDAR YEARS 2024 - 2027

### Version 04-07-2024

**Dearborn LaSalle Advisors, Inc.**
**William R Gray, CPA, MST, CVA**

**CHICAGOLAND GUNS & RANGE LLC**
**DEBTOR IN POSSESSION (CASE # 23-81055)**

FORECASTED CALENDAR YEAR 2024
Prepared 04/07/2024

| INCOME STATEMENT | JAN 2024 | FEB 2024 | MAR 2024 | APR 2024 | MAY 2024 | JUN 2024 | JUL 2024 | AUG 2024 | SEP 2024 | OCT 2024 | NOV 2024 | DEC 2024 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues:** | | | | | | | | | | | | | |
| Gross Receipts or Sales | $ - | $ - | $ 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | $ 1,125,000 |
| Returns & Allowances | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Revenues: | - | - | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 1,125,000 |
| **Cost of Goods Sold:** | | | | | | | | | | | | | |
| Purchases | | | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 510,000 |
| Supplies | | | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 12,500 |
| Subtotal: | - | - | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 522,500 |
| Gross Profit: | - | - | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 602,500 |
| **Administrative Expenses:** | | | | | | | | | | | | | |
| Advertising | | | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 17,750 |
| Auto & Truck Expense | | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 25,000 |
| Bank & Merchant Charges | | | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 2,500 |
| Cleaning & Janitorial | | | - | - | - | - | - | - | - | - | - | - | - |
| Computer & Technology Costs | | | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 2,850 |
| Dues & Subscriptions | | | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 200 |
| Insurance | | | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 4,750 |
| Licenses & Permits | | | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 1,150 |
| Meals & Entertainment | | | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 5,250 |
| Office Expense, Telephone, Internet | | | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 8,500 |
| Parking & Tolls | | | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 200 |
| Payroll-Salary, Wages, Payroll Taxes | | | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 171,000 |
| Postage/PO Box Rental | | | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 1,050 |
| Professional Fees - Legal | | | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 2,500 |
| Professional Fees - Accounting | | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 10,000 |
| Professional Fees - Trustee Fees | | | - | - | - | - | - | - | - | - | - | - | - |
| Rent/Property Taxes - Facility & Equipment | | | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 9,880 |
| Repairs & Maintenance | | | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 7,000 |
| Security & Alarm | | | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 410 |
| Taxes-Sales | | | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 75,000 |
| Training-Instructors | | | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 18,000 |
| Uniforms | | | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 2,320 |
| Utilities | | | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 15,800 |
| Total Expenses | - | - | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 381,110 |
| Operating Income | - | - | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 221,390 |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Income Tax Expense | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Self Employment Tax Expense | - | - | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (14,959) |
| Preliminary Net Income (Loss) | - | - | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 206,431 |
| Owner Compensation | - | - | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (80,000) |
| Net Income (Loss) | - | - | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 126,431 |
| **Adjustments for Cash Flow Items:** | | | | | | | | | | | | | |
| Liability Payment - Class One Kenneth Polhamus Trust | | | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (67,872) |
| Liability Payment - Class Two (All Creditors) | | | (10,028) | (10,028) | (10,028) | (10,028) | | | | | | | (40,112) |
| | | | (16,815) | (16,815) | (16,815) | (16,815) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (107,984) |
| Net Cash Flow: | $ - | $ - | $ (4,172) | (4,172) | (4,172) | (4,172) | 5,856 | 5,856 | 5,856 | 5,856 | 5,856 | 5,856 | $ 18,447 |

**CHICAGOLAND GUNS & RANGE LLC**
**DEBTOR IN POSSESSION (CASE # 23-81055)**
**INCOME STATEMENT**

FORECASTED CALENDAR YEAR 2025
Prepared 04/7/2024

| INCOME STATEMENT | JAN 2025 | FEB 2025 | MAR 2025 | APR 2025 | MAY 2025 | JUN 2025 | JUL 2025 | AUG 2025 | SEP 2025 | OCT 2025 | NOV 2025 | DEC 2025 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues:** | | | | | | | | | | | | | |
| Gross Receipts or Sales | $ 112,500 | $ 112,500 | 112,500 | $ 112,500 | 112,500 | $ 112,500 | 112,500 | 112,500 | 112,500 | $ 112,500 | 112,500 | 112,500 | $ 1,350,000 |
| Returns & Allowances | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Revenues: | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 1,350,000 |
| **Cost of Goods Sold:** | | | | | | | | | | | | | |
| Purchases | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 612,000 |
| Supplies | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 |
| Subtotal: | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 627,000 |
| **Gross Profit:** | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 723,000 |
| **Administrative Expenses:** | | | | | | | | | | | | | |
| Advertising | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 21,300 |
| Auto & Truck Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| Bank & Merchant Charges | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| Cleaning & Janitorial | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Computer & Technology Costs | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | |
| Dues & Subscriptions | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | |
| Insurance | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | |
| Licenses & Permits | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | |
| Meals & Entertainment | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | |
| Office Expense, Telephone, Internet | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | |
| Parking & Tolls | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | |
| Payroll/Salary, Wages, Payroll Taxes | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 205,200 |
| Postage/PO Box Rental | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 1,260 |
| Professional Fees - Legal | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| Professional Fees - Accounting | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Professional Fees - Trustee Fees | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | |
| Rent/Property Taxes - Facility & Equipment | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| Repairs & Maintenance | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | |
| Security & Alarm | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Taxes-Sales | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 21,600 |
| Training/Instructors | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | |
| Uniforms | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | |
| Utilities | | | | | | | | | | | | | |
| **Total Expenses** | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 457,332 |
| **Operating Income** | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 265,668 |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Income Tax Expense | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Self Employment Tax Expense | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (17,95_) |
| **Preliminary Net Income (Loss)** | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 247,7__ |
| Owner Compensation | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (96,000) |
| **Net Income (Loss)** | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 151,71_ |
| Adjustments for Cash Flow Items: | | | | | | | | | | | | | |
| Liability Payment - Class One Kenneth Polhamus Trust | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (81,44_) |
| Liability Payment - Class Two (All Creditors) | | | (10,028) | | | (10,028) | | | | (10,028) | | (10,028) | (40,1__) |
| | (6,787) | (6,787) | (16,815) | (6,787) | (6,787) | (16,815) | (6,787) | (6,787) | (6,787) | (16,815) | (6,787) | (16,815) | (121,55_) |
| **Net Cash Flow** | $ 5,856 | $ 5,856 | (4,172) | 5,856 | 5,856 | (4,172) | 5,856 | 5,856 | 5,856 | (4,172) | 5,856 | (4,172) | $ 30,159 |

**CHICAGOLAND GUNS & RANGE LLC**
**DEBTOR IN POSSESSION (CASE # 23-81055)**

FORECASTED CALENDAR YEAR 2026
Prepared 04/7/2024

| INCOME STATEMENT | JAN 2026 | FEB 2026 | MAR 2026 | APR 2026 | MAY 2026 | MAY 2026 | JUL 2026 | AUG 2026 | SEP 2026 | OCT 2026 | NOV 2026 | DEC 2026 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues:** | | | | | | | | | | | | | |
| Gross Receipts or Sales | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 1,350,000 |
| Returns & Allowances | | | | | | | | | | | | | |
| **Net Revenues:** | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 1,350,000 |
| **Cost of Goods Sold:** | | | | | | | | | | | | | |
| Purchases | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 612,000 |
| Supplies | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 |
| Subtotal: | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 627,000 |
| **Gross Profit:** | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 723,000 |
| **Administrative Expenses:** | | | | | | | | | | | | | |
| Advertising | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 21,300 |
| Auto & Truck Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| Bank & Merchant Charges | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| Cleaning & Janitorial | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Computer & Technology Costs | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 3,420 |
| Dues & Subscriptions | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| Insurance | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 5,700 |
| Licenses & Permits | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 1,380 |
| Meals & Entertainment | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 6,300 |
| Office Expense, Telephone, Internet | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 10,200 |
| Parking & Tolls | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| Payroll-Salary, Wages, Payroll Taxes | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 205,200 |
| Postage/PO Box Rental | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 1,260 |
| Professional Fees - Legal | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| Professional Fees - Accounting | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Professional Fees - Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fees - 7 Trustee Fees | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 11,856 |
| Rent/Property Taxes - Facility & Equipment | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| Repairs & Maintenance | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 492 |
| Security & Alarm | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Taxes-Sales | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 21,600 |
| Training/Instructors | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 2,784 |
| Uniforms | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 18,960 |
| Utilities | | | | | | | | | | | | | |
| **Total Expenses** | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 457,332 |
| **Operating Income** | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 265,668 |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Income Tax Expense | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Self Employment Tax Expense | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (17,951) |
| **Preliminary Net Income (Loss)** | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 247,717 |
| Owner Compensation | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (96,000) |
| **Net Income (Loss)** | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 151,717 |
| **Adjustments for Cash Flow Items:** | | | | | | | | | | | | | |
| Liability Payment - Class One Kenneth Polhemus Trust | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (81,447) |
| Liability Payment - Class Two (All Creditors) | | | (10,028) | | | (10,028) | | | (10,028) | | | (10,028) | (40,112) |
| | (6,787) | (6,787) | (16,815) | (6,787) | (6,787) | (16,815) | (6,787) | (6,787) | (16,815) | (6,787) | (6,787) | (16,815) | (121,559) |
| **Net Cash Flow:** | $ 5,856 | $ 5,856 | $ (4,172) | $ 5,856 | $ 5,856 | $ (4,172) | $ 5,856 | $ 5,856 | $ (4,172) | $ 5,856 | $ 5,856 | $ (4,172) | $ 30,159 |

**CHICAGOLAND GUNS & RANGE LLC**
**DEBTOR IN POSSESSION (CASE # 23-81055)**

FORECASTED CALENDAR YEAR 2027
Prepared 04/07/2024

| INCOME STATEMENT | JAN 2027 | FEB 2027 | MAR 2027 | APR 2027 | MAY 2027 | MAY 2027 | JUL 2027 | AUG 2027 | SEP 2027 | OCT 2027 | NOV 2027 | DEC 2027 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues:** | | | | | | | | | | | | | |
| Gross Receipts or Sales | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 1,350,000 |
| Returns & Allowances | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Revenues: | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 1,350,000 |
| **Cost of Goods Sold:** | | | | | | | | | | | | | |
| Purchases | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 612,000 |
| Supplies | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 |
| Subtotal: | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 627,000 |
| Gross Profit: | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 723,000 |
| **Administrative Expenses:** | | | | | | | | | | | | | |
| Advertising | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 21,300 |
| Auto & Truck Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| Bank & Merchant Charges | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| Cleaning & Janitorial | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Computer & Technology Costs | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 3,420 |
| Dues & Subscriptions | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | |
| Insurance | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 5,700 |
| Licenses & Permits | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | |
| Meals & Entertainment | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 6,300 |
| Office Expense, Telephone, Internet | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 10,200 |
| Parking & Tolls | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | |
| Payroll-Salary, Wages, Payroll Taxes | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 205,200 |
| Postage/PO Box Rental | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 1,260 |
| Professional Fees - Legal | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| Professional Fees - Accounting | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Professional Fees - Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Rent/Property Taxes - Facility & Equipment | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 11,856 |
| Repairs & Maintenance | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| Security & Alarm | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | |
| Taxes-Sales | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Training/Instructors | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 21,600 |
| Uniforms | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | |
| Utilities | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 18,960 |
| Total Expenses | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 457,332 |
| Operating Income | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 265,668 |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Income Tax Expense | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Self Employment Tax Expense | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (17,951) |
| Preliminary Net Income (Loss) | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 247,717 |
| Owner Compensation | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (96,000) |
| Net Income (Loss) | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 151,717 |
| **Adjustments for Cash Flow Items:** | | | | | | | | | | | | | |
| Liability Payment - Class One Kenneth Polhumus Trust | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (81,447) |
| Liability Payment - Class Two (All Creditors) | | | (10,028) | | | (10,028) | | | (10,028) | | | (10,028) | (40,112) |
| | (6,787) | (6,787) | (16,815) | (6,787) | (6,787) | (16,815) | (6,787) | (6,787) | (16,815) | (6,787) | (6,787) | (16,815) | (121,559) |
| Net Cash Flow: | $ 5,856 | $ 5,856 | $ (4,172) | $ 5,856 | $ 5,856 | $ (4,172) | $ 5,856 | $ 5,856 | $ (4,172) | $ 5,856 | $ 5,856 | $ (4,172) | $ 30,159 |

**CHICAGOLAND GUNS & RANGE LLC**
**DEBTOR IN POSSESSION (CASE # 23-81055)**

**FORECASTED CALENDAR YEAR 2028**
Prepared 04/7/2024

| INCOME STATEMENT | JAN 2028 | FEB 2028 | MAR 2028 | APR 2028 | MAY 2028 | JUN 2028 | JUL 2028 | AUG 2028 | SEP 2028 | OCT 2028 | NOV 2028 | DEC 2028 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues:** | | | | | | | | | | | | | |
| Gross Receipts or Sales | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 112,500 | $ 1,350,000 |
| Returns & Allowances | – | – | – | – | – | – | – | – | – | – | – | – | – |
| **Net Revenues:** | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 1,350,000 |
| **Cost of Goods Sold:** | | | | | | | | | | | | | |
| Purchases | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 51,000 | 612,000 |
| Supplies | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 |
| Subtotal: | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 52,250 | 627,000 |
| **Gross Profit:** | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 60,250 | 723,000 |
| **Administrative Expenses:** | | | | | | | | | | | | | |
| Advertising | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 1,775 | 21,300 |
| Auto & Truck Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| Bank & Merchant Charges | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| Cleaning & Janitorial | – | – | – | – | – | – | – | – | – | – | – | – | – |
| Computer & Technology Costs | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 285 | 3,420 |
| Dues & Subscriptions | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| Insurance | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 475 | 5,700 |
| Licenses & Permits | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 1,380 |
| Meals & Entertainment | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 6,300 |
| Office Expense, Telephone, Internet | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 850 | 10,200 |
| Parking & Tolls | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| Payroll-Salary, Wages, Payroll Taxes | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 17,100 | 205,200 |
| Postage/PO Box Rental | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 105 | 1,260 |
| Professional Fees - Legal | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| Professional Fees - Accounting | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Professional Fees - Trustee Fees | – | – | – | – | – | – | – | – | – | – | – | – | – |
| Rent/Property Taxes - Facility & Equipment | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 11,856 |
| Repairs & Maintenance | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| Security & Alarm | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 492 |
| Taxes-Sales | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Training/Instructors | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 21,600 |
| Uniforms | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 232 | 2,784 |
| Utilities | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 1,580 | 18,960 |
| **Total Expenses** | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 38,111 | 457,332 |
| **Operating Income** | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 22,139 | 265,668 |
| Interest Expense | – | – | – | – | – | – | – | – | – | – | – | – | – |
| Income Tax Expense | – | – | – | – | – | – | – | – | – | – | – | – | – |
| Self Employment Tax Expense | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (1,496) | (17,951) |
| **Preliminary Net Income (Loss)** | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 20,643 | 247,717 |
| Owner Compensation | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (8,000) | (96,000) |
| **Net Income (Loss)** | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 12,643 | 151,717 |
| **Adjustments for Cash Flow Items:** | | | | | | | | | | | | | |
| Liability Payment - Class One Kenneth Polhamus Trust | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (6,787) | (81,447) |
| Liability Payment - Class Two (All Creditors) | | | (10,028) | | | (10,028) | | | (10,028) | | | (10,028) | (40,112) |
|  | (6,787) | (6,787) | (16,815) | (6,787) | (6,787) | (16,815) | (6,787) | (6,787) | (16,815) | (6,787) | (6,787) | (16,815) | (121,559) |
| **Net Cash Flow:** | $ 5,856 | $ 5,856 | $ (4,172) | $ 5,856 | $ 5,856 | $ (4,172) | $ 5,856 | $ 5,856 | $ (4,172) | $ 5,856 | $ 5,856 | $ (4,172) | $ 30,159 |